Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
Tel. (337) 371-0375

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION**

| | | |
|---|---|---|
| **CORY A. FOX AND** § | | **CIVIL ACTION NO:** |
| **LISA I. BUTCHER** § | | |
| § | | |
| v. § | | |
| § | | |
| **HEARTLAND RECREATIONAL** § | | |
| **VEHICLES, LLC AND** § | | |
| **BEST RV CENTER** § | | |
| § | | |
| *Defendants* § | | **JURY TRIAL REQUESTED** |

**COMPLAINT**

**I.   Parties**

1.   Plaintiffs, CORY A. FOX and LISA I. BUTCHER, are individuals that are now and have been at all times citizens of the state of California.

2.   Defendant, HEARTLAND RECREATIONAL VEHICLES, LLC, hereinafter "HEARTLAND," is an Indiana limited liability company with its principal place of business in Indiana and is a citizen of the state of Indiana.  HEARTLAND and is a warrantor of a vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

HEARTLAND's agent for service of process is C T Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

-1-

3. Defendant, BEST RV CENTER, is a California company and a citizen of the state of California. BEST RV CENTER and is the seller of a vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

BEST RV CENTER's may be served at 5340 Taylor Court, Turlock, CA 95382.

## II.   Jurisdiction

4. This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.   Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant, BEST RV CENTER, is located in Turlock, California and subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.   Conditions Precedent

6. All conditions precedents have been performed or have occurred.

## V.   Facts

### A.   The Transaction

7. On or about December 31, 2021, Plaintiffs purchased a new 2022 HEARTLAND CYCLONE bearing VIN: 5SFCG463XNE490732, hereinafter "CYCLONE," from BEST RV CENTER.

The "CYCLONE" was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8. The sales price of the CYCLONE was $116,176.25. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **_Hughes v. Segal Enterprises, Inc._, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); _Chariton Vet Supply, Inc. v. Moberly Motors Co._, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B. Implied Warranties

9. As a result of the sale of the CYCLONE by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the CYCLONE would pass without objection in the trade under the contract description, and that the CYCLONE was fit for the ordinary purpose for which such motor vehicles are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the CYCLONE, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the CYCLONE had, in fact, repaired the defects.

12. Plaintiffs' purchase of the CYCLONE was accompanied by express warranties

offered by the Defendants, HEARTLAND and BEST RV CENTER, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the CYCLONE.

13.     The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the HEARTLAND's warranty booklet and owners manual. Also, the Defendant, HEARTLAND, continued to agree to extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D.     Actionable Conduct

14.     In fact, when delivered, the CYCLONE was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiffs's own words:

> **"Good afternoon Zee and Karen,**
>
> **I wanted to talk to you about the Heartland 2022 cyclone 4270 that my husband and I purchased from your dealership on December 30, 2021. It was delivered to our home in Magna, Utah on February 4th, 2022. I am including Damon from Heartland in this email as I want to get a solution for the repairs that are needed for my trailer right away through either Best RV, Heartland or a combination of both companies.**
>
> **When the delivery guys arrived with the trailer they tried to unload the trailer but the jacks for the trailer would not work, they tried several things to get the jacks working. They called someone and I assume that it was someone in Best RVs service department to help them to get the jacks to work so they could**

**unload the trailer. They kept trying things for a while and finally got the jacks to work enough to unload the trailer. I texted the salesman to have him call me that day but did not hear back from him. I also sent another message after that but did not hear from him until a week later, and when I spoke to him he said that he had been on vacation and that he was sorry to hear about the problems and he would talk to the service manager. I called heartland also since I had not heard back from the dealership. When I spoke to Heartland they asked to get an estimate from a mobile technician. I had a technician come out last week.**

**He found many issues on the trailer.  He stated that the winterization of the trailer did not happen. The water tank had untreated water in it and it was holding about 1/3 of its capacity. The mobile technician tested some things out in the trailer and found that the faucet in the kitchen is broken and is leaking water. The slide-out in the living room is hitting the other side of the wall when it is slid in, the trim is broken off. One kitchen chair is cracked at the bottom. The cabinet in the kitchen was never finished properly and the bottom piece is bowed. The garbage area has trim that does not fit and is not attached properly. There is trim that does not fit on the cabinet area in the kitchen as well just across from the refrigerator. There is a light that is broken in the kitchen. The wall panel is coming apart in the garage on the left side of the trailer if you are looking from the kitchen. The garage man door has a large gouge in it. The door in the bedroom is gouged. The wall panel is coming apart in 2 places in the bedroom. The tv has been mounted in the bedroom to where it is being smashed by the slide out and the trim is loose on the slide out. There is a panel on the exterior of the trailer that is coming apart just in front of the main entry door. There is a panel that seems to be lifting on the opposite side as well near the gas pump station. The mobile technician said that the roof has not been installed correctly and it is wrinkled and will need to be replaced. He was unable to check the other faucets as the kitchen one leaked so much that he could not pressurize the system. He stated that at least one of the hydraulic jacks is leaking and needs to be replaced also. The trailer was not cleaned and had sawdust and other dirt and debris left inside of it. There were also screws and nuts lying around on the floor. The mobile tech stated that the batteries that were installed by your dealership are not the correct batteries for this unit and that they are much, much too small. The generator does not start. The**

> **remote heater bypass valve is leaking. The main entry door has trouble closing and it is warped. There is a tear in the screen patio enclosure for the side patio and also a tear in the rear patio screen and a piece seems to be missing from the handle of the patio enclosure where the handle was pushed into the screen instead of closing the doors properly. The trailer also does not have the glass 3 season doors that the brochure shows is the upgrade in 2022.**
>
> **We need to arrange for this trailer to be repaired. We still do not have a truck to pull this trailer with and we would like to have your dealership arrange to pick it back up, bring it back to your shop and repair everything that is in need of repairs so that we can use this trailer unless Heartland can provide another dealership that will take care of these problems or have it returned back to Heartland's location to perform the repairs that are needed. We also would like it cleaned properly as we paid for and to have the proper batteries installed and have the trailer inspected fully again before delivery back to our home.**
>
> **Please get back to me as soon as you can. We want to be able to use the trailer very soon.**
>
> **Thank You,**
> **Lisa Butcher & Cory Fox"**

**The Plaintiffs CYCLONE has been out of service over 100 days.**

15.  Since purchase, Plaintiffs have returned his CYCLONE to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the CYCLONE, the more significant and dangerous defects were not repaired. Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the CYCLONE, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

16.  The defects experienced by Plaintiffs with the CYCLONE substantially impaired its

use, value and safety.

17. Plaintiffs directly notified the Defendants of the defective conditions of the CYCLONE on numerous occasions. Plaintiffs notified Defendants, HEARTLAND and BEST RV CENTER, that they wanted a rescission of the sale of the CYCLONE but the Defendants have failed and refused to buy back Plaintiffs' defective CYCLONE.

### VI.   Causes of Action

**COUNT 1:   VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

18. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

19. The CYCLONE is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

20. Plaintiffs are "purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

21. Defendant, HEARTLAND, is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

22. The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

23. The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the vehicle and or can cause serious bodily injury or death.

24. Plaintiffs brought their CYCLONE to BEST RV CENTER, an authorized repair facility, for repairs on numerous occasions in attempts to have the existing express warranties

satisfied.

25. Defendants have not repaired the nonconformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

26. Further, the sale of the CYCLONE to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

27. Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

28. Despite their breach of the express and implied warranties, Defendants have refused Plaintiffs' demand for a refund or replacement.

29. By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

30. Defendants' continuing breach of their obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiffs for civil penalties in an amount as set forth below.

31. Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

32.   Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

33.   Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

34.   Defendants, HEARTLAND and BEST RV CENTER, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

35.   The CYCLONE is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

36.   The express warranties more fully described herein above pertaining to the CYCLONE, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

37.   The actions of the Defendants as herein above described, in failing to tender the CYCLONE to Plaintiffs free of defects and/or refusing to repair and/or replace the defective CYCLONE tendered to Plaintiffs constitute a breach of the written and implied warranties covering the CYCLONE and hence a violation of the Magnuson-Moss Warranty Act.

38.   Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

39.   As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $300,000.00 according to proof at trial.

40. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: BREACH OF EXPRESS WARRANTIES**

41. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

42. Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' CYCLONE or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered the CYCLONE and warranted that the CYCLONE, was free of defects in materials and work quality at the time of delivery.

43. As alleged above, the Defendants breached its warranties by offering for sale and selling as safe to Plaintiffs a CYCLONE that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

44. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

45. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of

repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 4: BREACH OF IMPLIED WARRANTIES

46. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

47. The Defendants impliedly warranted that Plaintiffs' CYCLONE which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

48. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the CYCLONE, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

49. Because of the defects, Plaintiffs' CYCLONE is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

50. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 5: NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

51. Plaintiffs re-allege and incorporate by reference herein each and every allegation set

forth in the preceding paragraphs.

52. The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

53. The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

   a. Failure to design and manufacture a CYCLONE that did not harbor the defects alleged herein;

   b. Failure to notify Plaintiffs of the dangerous and defective condition of the CYCLONE when Defendants knew or should have known of the dangerous and defective condition;

   c. Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

   d. Failure to repair the CYCLONE in accordance with the express and implied warranties.

54. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:   BREACH OF CONTRACT**

55. Plaintiffs re-allege and incorporate s herein by reference each and every allegation set forth in the preceding paragraphs.

56. Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and

consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

57. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 7:    NEGLIGENT REPAIR**

58. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

59. On numerous occasions, Plaintiffs delivered the CYCLONE to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

60. On each occasion that Plaintiffs returned the CYCLONE for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted repairs of the CYCLONE pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiffs to perform repairs on the CYCLONE in a good and workmanlike manner within a reasonable time. These Defendants breached this duty.

61. Defendants' attempted repairs of Plaintiffs' CYCLONE were done so negligently, carelessly, and recklessly as to substantially impair the CYCLONE 's use, value, and safety in its operation and use. At no repair attempt was Plaintiffs' CYCLONE fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendants' attempts at repair. Nonetheless, each time Plaintiffs picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

62. As a direct and proximate result of Defendants' negligent failure to repair the CYCLONE within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous CYCLONE in conducting their daily activities. As a further direct and proximate result of Defendants' failure to repair the CYCLONE in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the CYCLONE in for further repair attempts and to leave the CYCLONE for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

63. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

### VII.  Economic and Actual Damages

64. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a..    Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b.    Loss of use;

    c.    Loss of the "benefit of the bargain";

    d.    Diminished or reduced market value; and

    e.    Costs of repairs.

### VIII.    Multiple Damages

65.    The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

66.    Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

67.    Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

### IX.    Request for Rescission

68.    Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

69.    Plaintiffs revoke their acceptance of the CYCLONE for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in CYCLONE would be repaired.  Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seeks cancellation of the debt and now offers to return the CYCLONE to Defendants.

### X.    Attorney Fees and Costs

70.    Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit

including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.   Prayer

71.   For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b.    Rescinding the sale of the 2022 HEARTLAND CYCLONE bearing VIN: 5SFCG463XNE490732 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.    Any diminution in value of the CYCLONE, attributable to the defects;

    f.    Past and future economic losses;

    g.    Prejudgment and post-judgment interest;

    h.    Damages for loss of use of vehicle;

    i.    Civil Penalties and/or Punitive damages;

    j.    Damages for mental anguish;

    k.    Attorney fees;

    l.    Costs of suit, expert fees and litigation expenses; and

  m. All other relief this Honorable Court deems appropriate.

## XII. Demand for Jury Trial

72. Plaintiffs hereby demands a trial by jury to the extent authorized by law.

            RESPECTFULLY SUBMITTED:

            BY: /s/ *Richard C. Dalton*
            Richard C. Dalton
            Texas Bar No. 24033539
            Louisiana Bar No. 23017
            California Bar No. 268598
            P.O. Box 358
            Carencro, Louisiana 70520-0358
            rick@rickdalton.law
            Tel. (337) 371-0375

            ATTORNEY FOR PLAINTIFFS